IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

ERIC L. KELLEMS,
Defendant.

Case No. 13–CR–40033–JPG–3

## MEMORANDUM OPINION AND ORDER

Before the Court is Eric L. Kellems' Motion for Compassionate Release. (ECF No. 106). His counsel, Julie Morian of the Office of the Federal Defender ("the FPD"), also moved to withdraw from the case. (ECF No. 111). For the reasons below, the Court **DENIES** Kellems' Motion for Compassionate Release and **GRANTS** the FPD's Motion to Withdraw.

### I. PROCEDURAL & FACTUAL HISTORY

#### A. The Conviction

In 2013, a federal grand jury in this District indicted Kellems for conspiring to manufacture and distribute methamphetamine. (Superseding Indictment 1, ECF No. 1). He pleaded guilty six months later, (Minute Entry 1, ECF No. 86); and the Court sentenced him to a 192-month term of imprisonment, (Judgment 2, ECF No. 91). He is currently incarcerated at Federal Correctional Institution ("FCI") Elkton in Ohio. (Def.'s Mot. for Compassionate Release at 1).

#### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Kellems' background. (*See* PSR 1, ECF No. 88).

According to the PSR, state law-enforcement officers discovered that Kellems and his wife "regularly manufactured methamphetamine" and "routine [stole] items necessary for" its production. (*Id.* at 3). "[T]hey hid their lab equipment behind a panel in the closet of a bathroom" and "conducted cooks at their personal residence." (*Id.* at 3–4). "[I]t was normal for them to go to Wal-Mart, take tool boxes or plastic totes, and put smaller items inside them. . . . Kellems would also place smaller items inside a 12-pack of soda or between a two-pack of cereal boxes." (*Id.* at 4). His wife too "would hide methamphetamine or whatever items she had in her vagina." (*Id.* at 5). A search warrant executed at Kellems' residence revealed the extent of their operations: Several "items used in the manufacture of methamphetamine" were hidden "inside a hollow wall of a bathroom closet"; unknown liquids were housed in glass jars; and beakers sat on the kitchen counter. Kellems' wife later told officers that "she and Eric manufactured methamphetamine to support their own addictions." (*Id.* at 4). "Kellems' children . . . also obtained pseudoephedrine for their parents." (*Id.* at 5). In less than a year, they turned over 70 grams of pseudoephedrine into methamphetamine. (*Id.* at 5–6).

Before committing this offense, Kellems pleaded guilty to at least eight other crimes from 1989 to 2007. (*Id.* at 8–11). This includes a 2000 conviction for possession of cocaine, a 2005 conviction for manufacturing methamphetamine, and a 2007 conviction for again manufacturing methamphetamine (he was also found with a firearm). (*Id.*). He was arrested at least five other times on suspicion of committing further crimes. (*Id.* at 13–14).

**C.  Kellems' Motion for Compassionate Release**

In 2020, Kellems moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that

serious medical conditions—"morbid obesity and severe internal health concerns"—make him especially vulnerable to the COVID-19 virus. (*Id.* at 1).

The COVID-19 virus, of course, is now a global pandemic. At FCI Elkton, five inmates currently have COVID-19; 905 have recovered; and nine have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 20, 2020).[1] In brief, Kellems argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 1). He also states that authorities at FCI Elkton were prepared to release him but ultimately decided otherwise. (*Id.*).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Kellems failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

---

[1]   *Available at* https://www.bop.gov/coronavirus.

The § 3553(a) factors include:

    (1)    the nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for—

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

        (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

    (5)    any pertinent policy statement—

        (A)    issued by the Sentencing Commission . . .; and

        (B)    that . . . is in effect on the date the defendant is sentenced[;]

    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 20, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. In a mere sentence, Kellems states that he "will pose no danger to society if he is granted compassionate release." (Def.'s Mot. for Compassionate Release at 3). His criminal history, however, suggests otherwise. True enough, Kellems' prior convictions largely revolve around his problems with addiction—as far as the Court can tell, Kellems was not involved with widespread distribution. Even so, Kellems has been in and out of custody for decades; there is no indication that he takes

---

[2] *Available at* https://www.bop.gov/coronavirus/.

seriously the impact his behavior has had on his family or his community. Indeed, he was willing to enlist his own children to fuel his addiction. Even if Kellems' medical conditions make him especially vulnerable to COVID-19, the public still has a strong interest in his continued incarceration to provide rehabilitation, to promote respect for the law, to emphasize the seriousness of the offense, and to deter further criminal conduct from Kellems and others.

### III. CONCLUSION

The Court **DENIES** Defendant Eric L. Kellems' Motion for Compassionate Release and **GRANTS** his counsel's Motion to Withdraw.

**IT IS SO ORDERED.**

**Dated: Friday, November 20, 2020**

                                            **S/J. Phil Gilbert**
                                            **J. PHIL GILBERT**
                                            **UNITED STATES DISTRICT JUDGE**